of in the act, if creditors are not referred to and included? That the words may embrace creditors, and are used in that sense also by congress, is manifest from the 7th section, authorizing "all persons interested" to show cause against a decree of bankruptcy; and it is most manifest that this right of opposition is extended to creditors, they being the prominent, if not, indeed, the only, parties who would be likely to feel an interest in the matter. Yet it by no means follows that the language bears no other meaning than that of "creditors," and it is against all rules of construction to suppose these different descriptions are used in identically the same sense by congress in the clause under consideration, for then it would be gross tautology, without significancy or necessity. The court must suppose a special meaning was affixed to the language by congress, and, as a fundamental rule of interpretation, that meaning will be regarded as varying from that of creditors, both to avoid redundancy, and because the term "creditors" had been in the same connection used in a way to mark that the nomen generalissimum was not designed, but only a special class. Besides, creditors, in their general relation to the bankrupt, must necessarily be allowed to make the opposition included by the 7th section, because they could not prove their debts until the decree then applied for, and which they were notified to oppose, had actually passed. The court is not called upon to designate the instances in which meaning could be given to the phrase "others in interest," without applying it to creditors, in the ordinary import and understanding of that term. There would seem no incongruity, however, in considering it as embracing ulterior and contingent claims against a bankrupt; such perhaps, as signing in co-suretyship with him to a third person, or holding his guaranty on some contract or covenant not yet broken, and various other cases that might be put in which a bankrupt would stand under a liability to a party, not amounting to a debt, or coming within the class of claims authorized by the statute to be proved as debts.

My opinion, accordingly, is that the creditor could not rightfully file objections and make opposition to the discharge of the bankrupt, for want of having previously proved his debt. The objections will therefore be disallowed

---

## Case No. 7,785.

In re KING.

[1 N. Y. Leg. Obs. 276.]

District Court, S. D. New York. 1842.

BANKRUPTCY — DEBT PAYABLE IN THE FUTURE — WHETHER WILL SUPPORT A DECREE—BANKRUPT AS A WITNESS.

1. A petitioning creditor's debt, which is certain and liquidated though payable in future, will support a decree in bankruptcy.

[Cited in Linn v. Smith, Case No. 8,375.]

2. The bankrupt cannot be examined as a witness, either to support the petition for a decree, or to defeat it.

[In the matter of Samuel King, a bankrupt.]

BETTS, District Judge. The point, presented by the objection, that petitioning creditor's debt is not yet due and payable, and cannot accordingly supply a foundation for the proceeding in this case, has already been fully considered and decided by this court. Mead's Case [Case No. 9,365], Nov. 11. Debts, certain and liquidated, though payable in futuro, afford sufficient ground for a petition to compel a decree in bankruptcy. It is set up by the bankrupt that the promissory note given by him included as part of its consideration certain outstanding debts due him and the petitioners as co-partners, the collection of which he assumed, but was not to be responsible for the amount until the same should be actually collected. If it is permissible at law, or in equity, to a party to prove part failure of the consideration of a promissory note in limitation of the recovery thereon, it is at least questionable on the evidence now produced whether the bankrupt did not accept the transfer of the debts absolutely, and undertake to account for the amount to his co-partner. It would not be at all an unusual arrangement on the dissolution of a firm for one partner to receive the effects and outstanding credits of the co-partnership at a stipulated sum, and agree to pay so much therefor to his co-partner. Many other considerations would have weight in such adjustments of joint concerns beyond the actual money equivalent obtained on the one side or the other. The party proceeded against as a bankrupt was called and admitted as a witness to prove facts to defeat the proceedings, though objected to by the petitioning creditor. The bankrupt is subject to a personal examination by order of the court, but he cannot be made a witness to support the petition or to defeat it. This is incontestably the English rule in bankruptcy. Archb. Bankr. 414, 415; Owen, Bankr. 271, 273. And although in our practice the opposition to a decree may be made by others than the bankrupt, the principle of the rule would still apply so far certainly as to preclude his admissibility on behalf of those who seek to defeat the petition. The matter must accordingly be referred back to the commissioner, if the opposing creditors supposed they obtained testimony from the bankrupt important to their case, to enable them to supply it from other sources. The case must also go back for a more definite statement in respect to the trading of King. It is admitted he bought sand, coal, and various materials employed in the manufacture of brick, and one witness states that he purchased fire mineral coal for King for that purpose, but it is left uncertain and equivocal, whether or no these materials, or any of them, entered into the composition and manufacture of the brick. It is plainly understood other-

wise by the counsel for King, because a material point in opposition to the decree, argued by him on the authorities and reasons of the case, rested upon the assumption that the entire manufacture had been carried on in the use of the products of King's own soil, and that the articles purchased in no way composed any part of the manufactured article. This is a material point, and the ambiguity resting upon the report of the proofs can only be removed by a reference of the case back to the commissioner to have the facts given with distinctness and certainty. Ordered accordingly.

# Case No. 7,786.

## KING v. ACKERMAN.

[N. Y. Times.]

Circuit Court, S. D. New York. ·Sept. 17, 1860. [1]

WILLS — DEVISE — NATURE OF ESTATE — FEE BY ·IMPLICATION.

[1. A devisee takes a fee by implication upon the mere possibility of his suffering loss by reason of being charged personally with the payment of legacies.]

[See note at end of case.]

[2. Evidence as to the valuation at the time of making the will, and at the testator's death, of real property expressly devised in fee, is not admissible to rebut the implication that the devisee takes a fee in another devise in respect to which he is charged with the payment of legacies, and subject to the possibility of loss.]

[See note at end of case.]

[3. A devise for life to testator's wife, then to his son, passes the fee, by implication, to the son.]

[Action of ejectment by Maria B. King against Richard Ackerman.]

Mr. Ireland and Cutler, Bronson & Bidwell, for .plaintiff.

Mr. Ketchum and Mr. O'Conor, for defendant.

NELSON, Circuit Justice. This is an ejectment to recover an undivided sixth part of a parcel of land described as the "homestead," in the will of Lawrence Benson, and situate at Harlem, in the Twelfth ward of the city·of New York. The testator died leaving a son, Benjamin L. Benson, and three grandchildren, the children of a daughter, Susan, the wife of Rev. Dr. Milldeoler. By his will, he devised, first, to B. L. Benson, the son, a parcel of land designated as then in the occupation of one George Williams, "to do and dispose of as he may think proper;" also, the homestead, where he then lived, situate on Harlem river; and, second, declared his will and intention to be that his son (B. L. B.) should give unto his grandchildren. after.the decease of his wife, the sum of $1.500; and, third, gave the income of the legacies, and of his estate, real and personal, unto his wife, Maria, during her widowhood, "to do and

---

[1] [Affirmed in 2 Black (67 U. S.) 408.]

dispose of as she may think proper." B. L. Benson, the son, died the 4th of October, 1852. This suit is brought by Mrs. King, one of the grandchildren, on the ground that the son (B. L. B.) took only a life estate in the homestead. The defendant claims under a title in fee derived from the son.

The principal question in the case is, whether or not the son (B. L. B.) took an estate in fee in the homestead by reason of the charge upon him personally to pay the legacies of the grandchildren. There is one feature in the case which is not found in any of the cases referred to on the argument, nor in any that have come under my own researches, and which, it is claimed on behalf of the plaintiff, distinguishes it from those in which it has been held that the devisee took an estate in fee by implication, on account of the personal charge imposed by the will; and, also, from the principle upon which these cases are founded. That principle is, where an estate is devised generally, or without words of limitation, and which according to their legal import would not carry a fee to the devisee. If personally charged with debts or legacies, &c., in respect to the estate the devisee will take a fee by implication, otherwise he might be a loser instead of a gainer by the devise, which would be against the presumed intent of the testator.

The argument on the part of the plaintiff is, that one of the parcels of land devised to the son in respect to which the charge was imposed is, upon the words of the will, in fee; and hence there is no necessity of creating a fee by construction or implication in the other parcel, in order to save the devisee from loss. As we have said, no case has been found in this class of cases in the books, and they are numerous, containing this peculiar feature; and the argument founded upon it to distinguish the case from the application of the general principle is certainly deserving of great weight. But, after the best consideration we have been able to give to the case, we have come to the conclusion, not without some hesitation, that this new feature should not have the effect to rebut the implication of a fee derivable from the charge of the legacies to the grandchildren or to distinguish it from the general principle upon which the implication is founded. We agree, if the position of the learned counsel for the plaintiff can be maintained,—namely, that the court must be able to see, in other words, it must be certain upon the face of the will, that the devisee will suffer loss should the life estate determine immediately·after satisfying or assuming the charge before a fee can be raised by implication,—the case is ·with the plaintiff. For as one of the parcels is devised in fee, it is apparent that a loss cannot be certainly predicated upon the termination of the life estate in the other. And hence, upon the above position, no implica-